## William R. Jernee

### *v.*

## Charles Simonson.

[Filed May 11th, 1899.]

1. Where one party holds title to all the property used in the conduct of a business and has the exclusive possession and control of both the property and the business, but by an agreement contracts to share profits with another, the agreement does not, in the absence of other proof of an intention to be partners, constitute, *inter sese*, a partnership. It is only a contract for sharing of profits.

2. Where two parties contract for profit sharing in a business which is to be carried on by one of them, and at the time of making the contract the property to be used in the business is subject to a prior chattel mortgage created by the other, a foreclosure under this prior mortgage, which divests the property and destroys the business, necessarily ends all obligation under the contract for profit sharing.

Jernee v. Simonson.

On bill, answer and proofs.

The bill alleges an agreement between the complainant and defendant, whereby the defendant was to carry on a certain hotel business at Spring Lake, and turn over to the complainant periodically one-half of the profits; that the business rela-tion between the defendant and complainant was a partnership, still in force; and prays for an accounting and payment by the defendant to the complainant of one-half of the profits.

The answer admits the agreement as stated in the bill, and that the defendant ran the business thereunder, but asserts that the agreement was fully carried out and an account rendered, and one-half of the true profits paid over to the complainant by defendant. It denies that the agreement between the defendant and complainant was a partnership, or that the agreement was in force since the foreclosure sale of the business hereinafter stated, and denies the complainant's right to an accounting. The answer also alleges that the complainant, if aggrieved, has a perfect remedy at law, and the defendant prays the same benefit as if he had demurred to the bill.

The facts material to the issue on which this litigation arises, are these: The complainant, William R. Jernee, was the owner of certain buildings at Spring Lake, New Jersey, and the lessee of the lot on which they were situate, his lease expiring May 1st, 1894; he also owned a number of goods and chattels, mostly household articles, furniture, &c., and bar fixtures. Jernee had carried on a hotel business in the property under two licenses, one for a hotel and another a wholesale liquor license, when, on January 17th, 1894, he executed and delivered to the defendant, Charles Simonson, a bill of sale, transferring to the latter all his buildings on the lot of which he was lessee (the lease giving the right of removal), and also all the goods and chattels mentioned in the schedule annexed to the bill of sale, and the lease of the premises; the buildings and the chattels being recited to be sold subject to three chattel mortgages, the first held by Ballantine & Sons. Jernee and Simonson, on the same date, executed an agreement whereby Simonson undertook, in part consideration

for the sale to him by Jernee of the good will and interest in his hotel business, the stock and fixtures, other personal property and the lease, to carry on the hotel business as theretofore conducted by Jernee, to keep accounts of the purchases and sales and expenses made and incurred in the business and of the profits arising therefrom, and to turn over to Jernee, once every three months, one-half of the profits between the parties.

Under the bill of sale and agreement, Simonson took possession of the property and conducted the hotel business there. In addition to his agreement to run the hotel business, Simonson paid Jernee a money consideration of $566.

On February 15th, 1894, Simonson rendered a statement to Jernee, showing a loss in the business of $13. The next statement was made by Simonson on October 1st, 1894, and covered receipts and disbursements of the business from January 1st, 1894, to October 1st, 1894, showing a profit of $242.18; one-half of that sum was paid and accepted by Jernee in settlement.

Shortly afterward Ballantine & Sons foreclosed the prior mortgage which they held on the goods and chattels and the hotel business, making Jernee and Simonson defendants, and under this foreclosure the property and business were sold on March 10th, 1895, to Ballantine, neither of the defendants putting in any defence.

On March 21st, 1895, Simonson wrote Jernee a letter notifying him of the foreclosure sale and saying, " enclosed find statement of all the business transactions done by me since purchase of the place of you, of course this ends all matters between us."

On April 6th, 1895, Ballantine & Sons, the purchasers of the personalty at the mortgage sale, acquired title by deed from Bradley to the real estate on which the hotel buildings, &c., were located, and then being the owners of both land and buildings, made an agreement with Charles Simonson, the defendant, and his brother, Edward Simonson, whereby the goods and chattels and business were sold to Simonson & Brother. A lease was made to them of the land, and Simonson & Brother thereafter conducted a hotel business under this arrangement with Ballantine & Sons. The money for conducting the new

hotel business was supplied by Edward Simonson, brother of the defendant.

*Mr. Silas W. Grimstead,* for the complainant.

*Mr. Aaron E. Johnston,* for the defendant.

GREY, V. C.

The first question in dispute to be disposed of is, what passed under the bill of sale, January, 1894, made by Jernee to Simonson. It calls for the buildings on a certain lot, the goods and chattels described and a lease. It is a written contract and its terms are readily ascertained. It does not attempt to dispose of any hotel business or of any good will. The buildings and the goods and chattels are recited to be sold subject to three mortgages, the first of which was held by Ballantine & Sons. By the collateral written agreement of the same date as the bill of sale, Simonson, as a part of the consideration for the sale, undertook to run a hotel business in the buildings mentioned in the bill of sale. A further consideration for the bill of sale was a payment of $566 by Simonson to Jernee. The bill of sale on its face purports to be an absolute conveyance to Simonson and was made for a valuable consideration paid by him to Jernee. Both parties treated this transfer of the goods as an absolute conveyance. The proofs support the claim that the bill of sale passed a complete title to Simonson. The latter held and used all the goods as though they were his own ; Jernee did not even make any inquiry respecting them or Simonson's disposal of them after the transfer. In April, 1895, in a proceeding against Jernee by his wife, for non-support, he swore that he was absolutely insolvent and had no means of any sort, or property of any kind, excepting wearing apparel worth $50, &c., and an *interest in a business with Simonson,* which was non-productive and worthless.

The testimony and the exhibits show that the bill of sale passed absolute title to Simonson in the buildings, goods and chattels, and the lease named in it, subject to the prior liens

existing against them. This being so, even if the Ballantine mortgage did not cover all the buildings, goods and chattels (as the bill of sale recited it did), and whether or not, under that chattel mortgage, all the buildings and goods and chattels named in the bill of sale were sold, Simonson cannot be called upon to account to Jernee for the value of any of them. Jernee by the bill of sale parted absolutely with his interest in them.

The second question to be considered is, has the defendant, Simonson, carried out his agreement with the complainant. The agreement between the parties was, first, that Simonson should carry on the hotel business as theretofore conducted by Jernee; and, second, that he should keep an accurate account of the business and turn over to Jernee one-half of the net profits, as found upon statements between them.

Simonson took possession of the buildings, goods and chattels, &c., under the bill of sale and proceeded to conduct the hotel business therein. He took in his own name a lease on the land, expiring May, 1894. When the lease and the wholesale and retail licenses expired in May, 1894, Simonson renewed them and continued to run the hotel business in his own name, but always recognizing Jernee's right to one-half of the profits, until the foreclosure sale by Ballantine & Sons in March, 1895. Up to the date of this sale Simonson seems to have accounted for the business transactions and to have substantially complied with his agreement in that respect. He rendered statements which were accepted by the complainant without dispute at the time they were delivered. Under the statement of October 1st, 1894, showing a profit, Jernee accepted payment of one-half of the profits stated. Upon the sale of the premises under Ballantine's mortgage in March, 1895, Simonson claims to have sent Jernee a statement of all transactions in the business to that date (March 2d, 1895). Jernee admits receiving a letter which referred to an enclosed statement, but now denies having seen any such statement. At the time of the receipt of the letter, however, Jernee seems to have raised no question as to the enclosure of the statement. The only disagreement between them as to these matters seems to be in relation to the Ballantine mort-

gage. Jernee claims that Simonson undertook with him to pay off the Ballantine mortgage by discounts on beer purchased from Ballantine & Sons. There was an agreement between Simonson and Ballantine & Sons, that in consideration for forbearance to foreclose that mortgage Simonson would assume it and pay it off by discounts on beer bills; but it is not shown that Jernee was any party to that arrangement, nor that he had any right to the benefit of it, nor is there any sufficient evidence that discounts had been allowed which ought to have been credited under it. Jernee was a defendant in the Ballantine foreclosure suit, but failed to make any defence thereto. If he had any right to demand that credits should have been made on that mortgage which were not allowed, he should have set it up by way of defence in that suit.

Simonson appears to have performed his agreement both in carrying on the hotel business and in rendering statements and paying to Jernee one-half of the profits, down to the time of the foreclosure sale. Jernee acquiesced in the management of the buisness and accepted the statements rendered.

The question whether or not the business association between the parties was terminated by the foreclosure sale, or still continues, remains to be considered. In this connection it is insisted by the complainant that the relation between the parties growing out of their agreement, constituted a partnership which has not been dissolved, and that the defendant should formally account. I am unable to concur in the view that the association between Simonson and Jernee was a partnership.

The terms of the agreement created no community of interest in the property, either in title or in use. The property was absolutely sold to and owned by Simonson. There was indeed a community of interest in the profits of the business to be conducted by Simonson, but that community of interest does not seem to have been created with the intention to form a partnership, but rather to have been the agreed method by which Simonson contracted to pay Jernee for the property. The language of the agreement on this point is.

"as part consideration for said sale and transfer, the said Simonson hereby agrees to carry on the hotel business as heretofore conducted by said Jernee, and in a careful and business like manner, and keep an accurate account of all purchases of stock and all expenses, etc., etc., and of the profits arising therefrom, and to turn over to the said Jernee at stated times —— one-half of the net profits of the business, as the same shall be found to have accrued upon a settlement between·the parties, and the said Jernee hereby agrees to· accept said share of the profits of the said business as a part of the consideration of said sale."

Jernee had no further relation to the business than this sharing of the profits; he was not, as between himself and Simonson, responsible for any losses; he had no part in conducting the business; he could not prevent the contracting of debts nor could he incur them. Nor was Simonson acting for himself and Jernee in carrying on the business, but for himself alone and in· his own name. He was to account and render a statement, but it was solely for the purpose of ascertaining the profits and satisfying Jernee what they amounted to when settlements were had between them. Simonson alone conducted the ·whole business. The element of agency for each other in and about the business in question, which is perhaps the most conclusive evidence of the existence of a partnership (*Cox* v. *Hickman, 8 H. L. Cas. 268; Wild* v. *Davenport, 19 Vr. 135*), does not appear in this matter.

The relations between Jernee and Simonson were created by contract between themselves; what these relations are is sought to be determined in a suit by one against the other. No claims of creditors or other outside parties interfere with the contractual relationship thus arising. The question to be determined is simply, did the parties intend by their agreement to form a partnership? The general rule is that if there is a community of interest in the profits, but not in the property, no partnership is created between the parties themselves if that be contrary to their real intentions. *2 Greenl. Evid.* § *482.* It is generally true that a participation in the profits of a business standing alone, makes those who share to be partners as to third persons, but as between the parties to the agreement, their intention controls. In *Sheridan* v. *Medara, 2 Stock. 477*, one loaned money

Jernee v. Simonson.

to another under an agreement that the lender should participate in the profits of the business carried on solely by the borrower in his own name. The chief-justice said, " probably neither Combs or Sheridan expected there was a partnership; they did not intend to become partners; as between themselves, they were not partners." This doctrine is recognized in *Hargrave* v. *Conroy, 4 C. E. Gr. 283,* and in *Wild* v. *Davenport, 19 Vr. 136,* in which case it was said, " participation in profits or the right to participate in profits is cogent evidence, and standing alone, may be conclusive evidence of a partnership; but in the case of the party who has not acted as a principal in the business, and therefore is not ostensibly a partner, may be explained and overcome by other circumstances." See also *Seabury* v. *Bolles, 22 Vr. 107.*

I cannot find any evidence in the agreement between Jernee and Simonson of an intention to create a partnership, nor did the actions of the parties preceding the time when the Ballantine mortgage was foreclosed indicate that they regarded themselves as partners. The only demand Jernee ever made upon Simonson was for money ; he wanted to inspect the books and accounts to see if profits had not been made, so that he could get his share. He never sought to interfere in the business, nor to have it conducted differently from the way Simonson was carrying it on. In short, Jernee only sought what the agreement gave to him, a share in the profits. The agreement on which this question of partnership is raised, is quite similar to one construed in the case of *Warwick* v. *Stockton, 10 Dick. Ch. Rep. 65, 66.* In that case Vice-Chancellor Pitney, speaking of the written agreement between the parties and their relations thereunder, says : " These features show that the relations were not those of partners but a mere common interest in a joint adventure, in which one party took all the risk of losses and the other party had a share of the profits, if any. In my judgment the defendant continues to be at all times the legal and equitable owner of the whole plant and business, and has the full control thereof subject to the duty to account for the manner in which he conducts it, and for one-half of the profits."

But whether Jernee and Simonson were partners or not, their

association was terminated by the sale of the hotel business and personal property under the Ballantine mortgage. That mortgage was created by Jernee. Simonson took the property and the business subject to it. Nothing was stipulated as to how long the agreement between them should continue. When the licenses and lease expired in May, 1894, Simonson had them renewed for the benefit of the business, and continued it until prevented by the foreclosure of the mortgage. The complainant has failed to show any wrongful act or omission on the part of the defendant which brought about the foreclosure of that mortgage. Neither party seems to have been able to prevent it. The possibility of that foreclosure was a fact, subject to which all their arrangements were made. They must have known that a foreclosure sale would take away the business and the property concerning which they made their arrangements. It has been said that in trading enterprises, emergencies may arise which will not only justify but require the cessation of the business, and that such contingencies must have been within the contemplation of the parties in forming the contract. *Wood* v. *Warner, 2 McCart. 87.* The sale of the personal property and business under the mortgage was the happening of such an event as ended the relations between the parties growing out of their agreement. It was a disposition of the subject-matter of their agreement by a title superior to that under which their contract was based. It was held (*Renton* v. *Chaplain, 1 Stock. 65*) that a sale of an interest in a partnership, under judgment and execution, dissolved the partnership. The same principle must apply to the relations between Simonson and Jernee.

The sale of the entire property and business concerning which their agreement was made, under a prior lien created by one party and recognized by both, in a proceeding to which both were defendants, must be held to have discharged their contract whether it was a partnership or merely a profit sharing.

The complainant insists that Jernee should account for the Hotel Windsor as to its furniture and fixtures which were not covered by the Ballantine mortgage. The personal property named in the bill of sale, located at the Hotel Windsor, was sold

Jernee v. Simonson.

absolutely to Simonson for a valuable consideration paid, and he is under no obligation to account for it. Jernee had used the Hotel Windsor as a sort of adjunct to his hotel business carried on at the corner of Passaic and Railroad avenues. The business done at the Hotel Windsor was entirely subservient to and dependent upon the main hotel, and had no separate existence. Upon the sale of the main hotel at the corner of Passaic and Railroad avenues, the business done at the so-called Hotel Windsor was ended. It no longer had any relation to the hotel business named in the agreement between the parties, consequently their can be no obligation upon Simonson to account for a business which terminated with the foreclosure sale and had no existence afterwards.

The complainant has entirely failed to show any wrongful or fraudulent acts or contrivances on the part of the defendant, bringing about the purchase of the property by the Ballantines under his mortgage, which entirely divested the interest of both Simonson and Jernee. When Simonson subsequently took the property from the Ballantines he purchased their superior title, and there was neither agreement nor obligation on his part to account to Jernee for profits on the business thus acquired.

There should be a decree that the bill of complaint be dismissed, with costs.